IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| CHRISTOPHER G. ROBERTS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 4:17-cv-01536-DCN |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| CAPTAIN JOSEPH POWELL, | ) | |
| SERGEANT ERIC DOE, and | ) | |
| OFFICER FREDERICK DOE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on United States Magistrate Judge Thomas Rogers, III's report and recommendation ("R&R"), ECF No. 96, that the court grant Captain Joseph Powell ("Captain Powell"), Sergeant Eric Doe ("Sergeant Doe"), and Officer Frederick Doe's ("Officer Doe") (collectively, "defendants") motion for summary judgment, ECF No. 68. For the reasons set forth below, the court adopts the R&R and grants defendants' motion for summary judgment.

## I. BACKGROUND

The facts of this case are set forth fully in the R&R, and as such, the court refrains from a lengthy recitation here. In summary, this case arises out of plaintiff Christopher Roberts' ("Roberts") incarceration at Ridgeland Correctional Institution ("Ridgeland"). Roberts alleges that after arriving at Ridgeland, he was placed in an unlocked cell in a dangerous dormitory and was subsequently robbed and assaulted in that cell by other inmates. Roberts brought this action on June 12, 2017, pursuant to 42 U.S.C. § 1983, alleging that defendants—officers who worked at Ridgeland—violated his constitutional rights by their deliberate indifference to his safety. On September 25, 2018, defendants

1

filed a motion for summary judgment, ECF No. 68, to which Roberts responded on October 26, 2018, ECF No. 79. On March 29, 2019, the R&R granted the motion for summary judgment on the grounds that: (1) Roberts failed to exhaust his administrative remedies before filing this federal action, as required by the Prison Litigation Reform Act ("PLRA"); and (2) Roberts failed to present sufficient evidence to support the merits of his Eighth Amendment claim that defendants failed to protect him from harm while at Ridgeland. Roberts filed his objections to the R&R on April 12, 2019. ECF No. 97. Defendants have not filed a response to these objections or any objections of their own, and the deadline for such filings has passed.

## II. STANDARDS OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's report to which specific, written objections are made, and may accept, reject, or modify, in whole or in part, the recommendations contained in that report. 28 U.S.C. § 636(b)(1). The magistrate judge's recommendation does not carry presumptive weight, and it is the responsibility of this court to make a final determination. Mathews v. Weber, 423 U.S. 261, 270–71 (1976). A party's failure to object may be treated as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 150 (1985).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[S]ummary judgment will

2

not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. Id. at 255.

### III. DISCUSSION

Roberts objects to the R&R's conclusion that he failed to exhaust his administrative remedies before filing this suit and that he failed to present sufficient evidence to support the merits of his Eighth Amendment deliberate indifference claim. Because the court agrees with the R&R that summary judgment should be granted on exhaustion grounds, it refrains from addressing the merits of Roberts' claim.

The PLRA was enacted to stem the flood of prisoner litigation suits in federal court and requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In other words, before filing a federal lawsuit, a prisoner must follow the administrative procedures set out by the prison system for filing a grievance within the system. Jones v. Bock, 549 U.S. 199, 218 (2007) ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.") Only once a prisoner has exhausted the internal administrative procedures may he seek relief in federal court. This

exhaustion requirement applies even when a plaintiff, such as Roberts, is seeking monetary damages for harm he suffered at the prison. Booth v. Churner, 532 U.S. 731, 741 (2001) ("Congress has mandated exhaustion clearly enough, regardless of the relief offered through the administrative procedures.").

The South Carolina Department of Corrections ("SCDC") has set forth the grievance policy that all inmates like Roberts must follow and exhaust before seeking relief in court. See SCDC Policy GA-01.12, Inmate Grievance System, May 12, 2014, Ex. A to Aff. S. Anderson, ECF No. 68-8.[1] This policy requires first that inmates "make an effort to informally resolve a grievance by submitting a Request to Staff Member Form . . . within eight (8) working days of the incident." Id. ¶ 13.2. The Institutional

---

[1] Roberts argues that the R&R improperly relied on the affidavit testimony of Sherman Anderson ("Anderson"), Chief of the Inmate Grievance Branch of the SCDC. Defendants submitted with their motion for summary judgment an exhibit containing an affidavit from Anderson explaining the validity of two documents that were attached to his affidavit: (1) SCDC Policy GA-01.12, Inmate Grievance System, Ex. A to Anderson Aff.; and (2) SCDC's records of any grievances filed by Roberts, Ex. B. to Anderson Aff. ECF No. 68-9. Anderson's affidavit sets out the context for these documents before concluding that "Plaintiff failed to properly exhaust his administrative remedies and failed to comply with agency guidelines for grieving the issues he references in his Complaint." Anderson Aff. ¶ 20. Defendants did not previously identify Anderson as a fact witness but rather as a records custodian used to demonstrate the validity of the SCDC grievance policy and of Roberts' records under the Federal Rules of Evidence. Thus, Roberts argues that it was inappropriate for the R&R to "cite[] Anderson's testimony in support of its factual findings and credit[] Anderson's conclusions over Mr. Robert's testimony to the contrary." ECF No. 97 at 5.
However, nowhere in the R&R does it reference, let alone rely upon, any conclusions offered by Anderson in his affidavit. Rather, the R&R cites only to the exhibits submitted by Anderson with his affidavit. See ECF No. 86 at 8 (citing to SCDC Policy No. GA-O 1.12 (Ex. A to Anderson Aff.) and to Pl. Grievance History (Ex. B to Anderson Aff.). The R&R and this court are allowed to rely on documents submitted by the parties in deciding upon a motion for summary judgment. The only role that Anderson's affidavit played in the R&R's reasoning—and likewise in this court's conclusions—was that of a record custodian verifying that the documents relied upon by the magistrate judge were authentic under the rules of evidence. Thus, the court rejects Roberts' arguments that the R&R's improperly relied upon Anderson's affidavit.

Grievance Coordinator ("IGC") will then conduct an investigation into the situation and make recommendations to the Warden regarding how to resolve the matter. Id. ¶ 13.3. However, "[a]ny grievance which alleges criminal activity will be referred immediately to the Chief/designee, Inmate Grievance Branch." Id. ¶ 15. The next official step is for the inmate to file SCDC Form 10-5, Step 1, which is the first official grievance an inmate makes. Id. The inmate may then appeal any decision on Step 1 by filing SCDC Form 10-5a, Step 2, and the "responsible official will render the final decision on the grievance within 90 days from the date that the IGC received the appeal of the Warden's decision." Id. ¶¶ 13.5–13.7. Finally, the inmate may appeal a final answer on the grievance to the South Carolina Administrative Law Court. Id. ¶ 13.9.

Defendants submitted to the court the records of Roberts' SCDC grievance history from September 21, 1995 to September 12, 2017, the date the records were pulled from the SCDC system. See SCDC Offender Management System, All Grievances Filed By An Inmate, Ex. B to Anderson Aff., ECF No. 68-10. The court's review of those records shows that Roberts did not file any Step 1 grievances after the alleged incident of November 18, 2016. However, SCDC's Offender Management System and Roberts' own testimony demonstrates that he filed an informal Inmate Request on December 1, 2016, the day after he was transferred from Ridgeland to Allendale Correctional Institution ("ACI"). According to Roberts, he "put it in the kiosk as soon as [he] was able to get to the kiosk and fill the paperwork out when I was at Allendale." Roberts Dep. at 155:14–18. His Inmate Request details, with original spelling and punctuation retained, are as follows:

> I would like to know what to do about filing paperwork on officers at Ridgeland who house me in the wrong cell. And no counts was being done

5

> to show where I was I was robbed and violated two inmates is charged on a PREA case unit was on lock down but officer allowed inmates to run freely and left my door unlocked because the toilet did not work and no lights he said I was on the roll call sheet for cell 40 but was put in 24 due to him just allowing inmates to move on their own I got their on Friday from McDougal and was robbed and violated next evening. His SGT admitted his officer was in the wrong but I would like to know what I can do to have officer held accountable I was emergency transfer to Allendale yesterday. Thank you.

Roberts Inmate Request, ECF No. 68-10. On December 16, 2016, the IGC issued the following response to the request: "Inmate Roberts: [ ] You can submit your grievance for review. [ ] In accordance to SCDC Policy, GA-01.12 Inmate Grievance System, Section 15, grievances alleging criminal activity will be forwarded to the Chief, Inmate Grievance Branch, for possible investigation by the Division of Police Services." Id. However, there is no record of Roberts submitting a grievance after receiving this notification. Thus, the R&R concluded that Roberts had failed to exhaust his administrative remedies prior to filing this lawsuit.

While the exhaustion requirement has been clearly mandated by Congress, exhaustion of administrative remedies is only required when those remedies are "available." 42 U.S.C. § 1997e(a); see also Ross v. Blake, 136 S. Ct. 1850, 1856 (2016) ("[T]he remedies must indeed be 'available' to the prisoner . . . but aside from that exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'"). "Because the PLRA does not define the term, courts have generally afforded it its common meaning; thus, an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). The Supreme Court has delineated three situations in which an administrative

procedure is deemed unavailable, negating the requirement that the prisoner first exhaust these procedures before filing a lawsuit. "First, [ ] an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Ross, 136 S. Ct. at 1859. "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use" when there exists some process for relief "but no ordinary prisoner can discern or navigate it." Id. In these circumstances, however, "[w]hen an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion." Id. Finally, inmates are not required to exhaust administrative remedies "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

Roberts argues that he should not be required to have exhausted the prison's administrative procedure because he was denied access to the grievance system and then misled about what it required, thus making it unavailable. Specifically, Roberts claims that he was denied access to the grievance system immediately following the assault during the week he spent in medical custody and then the three to four days he spent in protective custody. Roberts Dep. 152:20–154:20. He testified that while in medical and protective custody, he was told by prison staff that he had to wait to file a grievance until he was back in the general population. Id. As such, he argues that he should not be punished for failing to file an inmate request during this time. However, the court is not concerned with the fact that Roberts did not begin the administrative process while he

7

was in medical and protective custody, as there is no time limit for prisoners filing a grievance alleging sexual abuse. SCDC Policy GA-01.12, Inmate Grievance System ¶ 15.2.1. Rather, the court's finding that Roberts failed to exhaust his administrative remedies is based on his decision not to file a grievance after receiving the official green light to do so in the IGC's response to Roberts' inmate request on December 16, 2016.

There is no genuine dispute about any material facts regarding the timeline of events. On November 30, 2016, Roberts was transferred to ACI and concedes that once he arrived at ACI, he was able to access the kiosk to fill out the paperwork that begins the grievance process. Roberts Dep. at 155:14–156:6. The prison records show that on December 1, 2016, Roberts submitted his informal Inmate Request through the kiosk inquiring about the process for "filing paperwork" about defendants. Roberts claims that on or about this date, the "grievance lady at Allendale" "responded back saying that I was supposed to did [sic] that within five days, and I explained to her, my situation, and she said, well yours—you know you tried."[2] Id. Then on December 16, 2016, Roberts received a response to the Inmate Request telling him to move forward with submitting his grievance and informing him that his grievance alleging criminal activity will be forward to the chief of the Inmate Grievance Branch. Roberts' SCDC grievance records demonstrate that he did not proceed with submitting a grievance.

Roberts argues that the statements made to him by the "grievance lady at Allendale" that he was supposed to have filed his request/grievance within five days

---

[2] Defendants neither concede that this was said to Roberts nor outright deny it. ECF No. 81. However, even if defendants do deny it, the court views the evidence in the light most favorable to the plaintiff for the purposes of summary judgment and proceeds with its analysis as though a grievance employee at Allendale did in fact make this statement to Roberts.

misled him about the administrative process, essentially thwarting his attempt to comply with the SCDC grievance policy. Roberts' arguments regarding the "unavailability" exception to the PLRA's exhaustion requirements appear to fall squarely within the third category espoused by the Ross court—when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation or intimidation."[3] Ross, 136, S.Ct. at 1860. He contends that the R&R was wrong in "adopting what appears to be a novel rule whereby Mr. Roberts should have continued to submit grievances even after he was frustrated from doing so and told by SCDC staff that any grievance was untimely." ECF No. 97 at 2. However, even viewing the evidence in the light most favorable to the plaintiff, Roberts has not presented evidence from which a jury could find that he was thwarted from engaging in the administrative grievance process such that it was unavailable to him.

First, the court notes that Roberts has not testified that the Allendale employee told him that his informal Inmate Request had been denied because it was untimely; rather, according to his testimony, she merely informed him when he submitted his request that he was supposed to have filed a request/grievance within five days. About two weeks later Roberts received the official response to his Inmate Request that told him that he should proceed with filing his grievance, which unequivocally informed him that his request was not being denied due to timeliness concerns. While courts have found that "grievance procedures are unavailable to an inmate if the correctional facility's staff

---

[3] Roberts has not alleged—and the court finds no evidence—that this his case falls under the first two exceptions, namely that officer were "consistently unwilling to provide any relief to aggrieved inmate" or that "the administrative scheme was so opaque" that it was practically impossible to navigate. Ross, 136 S.Ct. at 1859.

9

misled the inmate as to the existence or rules of the grievance process so as to cause the inmate to fail to exhaust such process," Davis v. Fernandez, 798 F.3d 290, 256 (5th Cir. 2015), the evidence here indisputably shows that the opposite happened—the prison told him that could file a grievance form and this this form would be submitted directly to the Chief of the Inmate Grievance Branch for possible investigation. See also Williams v. Green 2017 WL 3175992, at *4–5 (D. Md. July 25, 2017) (finding, in spite of plaintiffs' allegation that he was told that signing an incident report "would be enough for an investigation," that Williams "has not shown that this statement, by an unnamed individual, was a misrepresentation" and that "there is no indication that he was "thwart[ed] from taking advantage of a grievance process"); State v. S.C. Dep't of Corr., 2019 WL 693392, at *9 (D.S.C. Jan. 25, 2019), report and recommendation adopted, 2019 WL 689706 (D.S.C. Feb. 19, 2019) ("Simply put, the affidavits do not tend to show that any correctional officer used trickery, lies, or threats to prevent these plaintiffs from filing a grievance about the claims at issue.").

Roberts has not presented—and the court has not found—any cases with facts similar to this case in which a court has determined that prison's administrative grievance process was unavailable to the inmate. Cf. Davis, 798 F.3d 290, 295–96 (5th Cir. 2015) (finding unavailability where jail staff told inmate that the grievance process did not have a second step for him to follow when it did); Allard v. Anderson, 260 F. App'x. 711, 714–15 (5th Cir. 2007) (unpublished) (remedies unavailable because inmate didn't discover injuries until after he left jail); Aceves v. Swanson, 75 F. App'x. 295, 296 (5th Cir. 2003) (unpublished) (remedies unavailable because prison staff refused to provide grievance form); Waddell v. Maryland Pre-Trial Div., 2017 WL 550033, at *7 (D. Md.

Feb. 10, 2017) (rejecting argument that administrative remedies were unavailable to him because he was unaware of the remedy process and because he was placed in a mental health ward and given medication); Washington v. Rounds, 223 F. Supp. 3d 452, 459 (D. Md. 2016) (denying summary judgment upon finding that there was sufficient evidence to support inmate's "claims that his grievances were tampered with and destroyed and that he took all necessary steps to comply with exhaustion requirements"). Even when taking into account Roberts' testimony, the court finds as a matter of law that he was not prevented from filing a grievance form because of any misrepresentation from the prison. Furthermore, Roberts has not alleged that he was prevented from filing his grievance by any "machination" (scheme) or "intimidation" by prison officials.

Thus, the court finds that Roberts' failure to comply with SCDC's administrative grievance process constitutes a failure to exhaust his available administrative remedies.

## IV. CONCLUSION

For the reasons set forth above, the court **ADOPTS** the R&R and **GRANTS** defendants' motion for summary judgment.

**AND IT IS SO ORDERED.**

	DAVID C. NORTON
	UNITED STATES DISTRICT JUDGE

**June 7, 2019**
**Charleston, South Carolina**